Good morning, all. The first case we have for argument this morning is Bible v. United May it please the court. My name is Anna Prakash and I represent the appellant Bryanna Bible. This court should reverse the district court's dismissal of Ms. Bible's complaint for three reasons. First, Ms. Bible's claims are not preempted by, nor are they disguised claims under the Higher Education Act. They are consistent with the act, and therefore, under this court's opinion in Wygod v. Wells Fargo, which the district court ignored, must be allowed to go forward. Second, the guarantee agency and defendant in this case, USA Funds, had no authority to impose the collection costs it imposed on Ms. Bible. Neither the master promissory note, the Higher Education Act it incorporates, nor the rehabilitation agreement allow for the imposition of costs where a borrower timely agrees to rehabilitate, as Ms. Bible did here. And third, Ms. Bible's claim under the racketeer-influenced Corrupt Organizations Act, RICO, stands apart from her breach of contract claim, apart from the Higher Education Act, and constitutes a viable claim in its own right. So let me begin with my first point, which is that these claims are not preempted. The district court and USA Funds would have it be such that any contract that incorporated a federal law, where that federal law did not itself have a private right of action, could not be enforced in court, and that is just not the way the law works. Contracts are enforced in court all the time, even when they incorporate other documents, and even when they incorporate federal law. And the contract in this case, the master promissory note, explicitly contemplates that state law will give the borrower additional rights and remedies. And so if I could direct the court to that contract, the master promissory note, and specifically page 122 of the appendix, under the third column, Governing Law and Notices, it makes clear that applicable state law may provide for certain borrower rights and remedies. If this contract was preempted under the Higher Education Act, then that term would have no meaning. So you have a district court that has come down with an opinion that's inconsistent with the document itself, and inconsistent with binding law, specifically this court's opinion in Wygod v. Wells Fargo. The Higher Education Act actually has some explicit preemption provisions, doesn't it? And the regulations do as well. That's correct, Your Honor. In cases of actual conflict. Right, that's exactly right. And the language of those regulations... There's no indication of field preemption here, or anything like that? That's exactly right. So we're not talking about field preemption, we're not talking about express preemption, we're talking about conflict preemption. And the text of the regulation itself speaks in language related to conflict preemption, saying that there's preemption where there would be a conflict with enforcement of the Higher Education Act. And as this court explained in Wygod, where federal law supplies the standard of care, there can be no conflict. And that's the situation we have here. We have a contract, and if I could direct the court again to the appendix at page 122, under the heading Late Charges and Collection Costs, the contract explicitly states that the lender may collect any other charges and fees that are permitted by the Act, meaning the Higher Education Act. So the contract looks to federal law to supply the standard of care, and because it does that, there can be no conflict. Ms. Prakash, do we have any indications here as to what collection costs were incurred or imposed specifically after the rehabilitation agreement was offered? No, that's not part of the record, but the record does make clear that at the point collection costs were imposed, all USA funds had done was send a couple of letters, a fax, and had answered a few phone calls. And the interesting part of that, Your Honor, is that the same contract, under the phrase, the term that I've just read, collection costs permitted by the Act, and the term that the district court and USA funds points to, states that if I default on my loan, meaning if Ms. Bible defaults on her loan, this is the second column on page 122 of the appendix, I will pay reasonable collection fees. Reasonable collection fees. So Ms. Bible didn't agree. Presumably that includes only costs that are actually incurred. Well, or permitted by the Act, right? So here USA funds imposed over $4,000 in collection costs on Ms. Bible. That's more than 20% of the balance of her loan, and they'd only performed the functions that I explained earlier, sending a few letters. So the only way that they can justify that as reasonable is to look to the Higher Education Act itself, which permits the imposition of costs, the calculation of costs, rather, on a percentage flat rate basis. But if they're going to look to the Higher Education Act to determine and justify the calculation of costs, then they also need to look to the Higher Education Act to determine whether those costs can be imposed in the first instance. And here they can't. The Higher Education Act does not permit the imposition of costs where a borrower timely agrees to rehabilitate, as Ms. Bible did here. Ms. Prakash, I guess I'm a little confused. Do you think the defendant could charge collection fees when it has not incurred collection costs? In some situations, yes. Because the Higher Education Act regulation, and this is what that Barnes case was about, talks about how collection costs are not imposed on all borrowers who default. They are imposed on borrowers who reach a certain stage of delinquency, and that stage occurs after the 60 days have passed. And in that case, the Barneses were challenging this flat rate imposition of collection costs, arguing various things, including, well, we're in... It may not be worth trying to itemize too specifically, but okay, thank you. Right. So, returning to this idea of preemption, these claims aren't preempted, nor are they disguised claims. The district court says, well, this is just a vehicle to bring a claim under the Higher Education Act. This is a claim to enforce a contract that incorporates federal law. And again, this idea of a disguised claim was also addressed in Wygott. And the court explained that just because Congress does not create a private right of action under federal law does not mean that it intended to foreclose state lawsuits. And here, Congress didn't intend to foreclose state lawsuits. If they did, they would have directed the Department of Education not to create a regulation that specifically contemplates state lawsuits, except where there is conflict preemption. And this document itself would not make reference to the existence of other state law remedies. These claims just are not preempted. This loan was in default, right? Yes. Okay. And what is the amount at that point when it was in default? What was owed, you know, or approximately? Approximately $17,000 was the principal balance. So it's not huge. Now, that was delinquent for more than 270 days, right? I believe so, yes. Yeah. So that's when this opportunity, I guess you wouldn't call it that, but that opportunity to rehabilitate comes in. Isn't that right? That's correct. And I would call it an opportunity. The regulations call it an opportunity. Okay. All right. So, but with that opportunity, there comes some obligations, right? Correct. And doesn't it specifically state that a benefit is that the amount of collection and fees will be capped? They will be capped if they had been incurred in the, sorry, imposed in the first place. And so what I think Your Honor is referencing is the rehabilitation agreement itself. Right. That comes after the 270 days have expired. That's when that, that's what I'm talking about. Correct, yes. The rehabilitation agreement is the agreement that was offered to Ms. Bible. But that agreement states that her collection costs are zero. It just flat out says $0. Okay. So there's nothing accrued at that point? Is that what that means? There is nothing imposed in any way that can be reduced. And that's what you're talking about, I believe, with capping the amount of collection costs. The rehabilitation agreement speaks in terms of reducing collection costs that have been added. Well, the collection costs that have been added are zero. It grants USA funds no authority to go up from zero, only down. All right. Well, that's what I was looking at because it seems that there at least is a recognition of collection costs. And I would say yes, but because this document is a form document. And so for other borrowers, it might not say that collection costs are zero. Or it might be that the borrower doesn't rehabilitate right away as Ms. Bible did. And in that case, collection costs could start to accrue. And in that case, there would be a need to reduce them down to this amount that's listed in the agreement. And that would be the cap that you've mentioned. But here, for Ms. Bible, her collection costs are zero. USA funds told her they were zero. And she agreed to rehabilitate, I think, within three days of getting this agreement. Did she fulfill the 10-month rehabilitation? Yes. What was it, $50 a month or something? That's correct. It's $50 a month. And I believe that she's been paying that since this agreement was entered into. Her loan hasn't gone all the way through to rehabilitation. I don't know what the calculation is. What would the payment be in order to pay down that loan? I'm not sure. More than $50, I presume. Certainly more than $50. I don't know the exact amount. I don't think that's in the record because the total amount has gone up because of capitalization of interest. So I believe her current balance is over $20,000 at this point. So you do have the capitalization of the interest. I don't know what all this involves as far as collection. Is this part of the process of collection, that we're here now? No, we're not here in any sort of capacity to enforce collections. Okay. So the money, she's still paying on this? That's correct. Okay. And it's not delinquent, I presume? And it's not delinquent. And you're not claiming that she's exempt, somehow protected from any and all collection costs, for example, if she were to default now? That's correct. Before you dig into the details of the regulations, just a couple of quick factual questions. Because the regulations that apply have been shifting a little bit over the years here, are the specific dates of her loan disbursements at all relevant? No. Okay. And at some point, I hope, today you'll explain to us your damages theory. But if you want to go ahead, whatever order you like. Sure. Well, Ms. Bible's damages are the amounts that she has paid to date that have been allocated to collection costs. And so in this case, I believe Exhibit 5 to our complaint, which is in the appendix, lists her payment history. It's on page 142 of the appendix. That was as of January of 2013. We don't have, and it's not part of this record on a motion to dismiss, the additional collection costs that could have been paid. And if this case, the opinion is reversed and we're allowed some discovery, we'd be able to flesh out damages a little bit more. But the theory would be the amounts that Ms. Bible paid that were then allocated to these collection costs. Okay. So Your Honor has mentioned the regulations, and I'd like to talk about them because I think they're very important here. Ms. Bible's contract incorporates the Higher Education Act specifically with respect to when collection costs can be imposed. There are two parts of the Higher Education Act regulations that are relevant. The first appears, it's reprinted on page 43 of the appendix, if that's helpful to look at. It's section 682.410B52, which explicitly states that the guarantee agency, before it assesses collection costs, needs to do the four things that are enumerated there. And in a separate section that comes later, which is 682.410B4B, the regulation states that one of those four things takes 60 days to complete, specifically the opportunity for an administrative review of the legal enforceability or the past due status of the loan. So all four things need to be completed before collection costs can be imposed, and one of those things takes 60 days to complete. But that 60-day time is not just a time limitation. If a borrower agrees to rehabilitate her loan within those 60 days, as Ms. Bible did, then collection costs cannot be imposed. That's the position that the Department of Education, who wrote these regulations, took in the Barnes case. And if you look at these opportunities that are listed on page 43 of the appendix, that's the only reading of the regulation that makes sense. If collection costs could be imposed no matter what at the end of the 60 days, then there would be no reason to give the borrower these opportunities. All of those opportunities, including reviewing the guarantee agency's records, challenging whether the loan is in fact past due, or voluntarily agreeing to repay, all of those opportunities are aimed at challenging whether the loan is in fact past due to have these collection costs be imposed anyway, or to voluntarily agree to repay. If collection costs could be imposed no matter what, then why give the borrower those opportunities? Well, she is in default at this point, and in a lot of other contexts, the lender would be perfectly entitled to begin collection proceedings, right? But I thought the idea here was that the Department of Education and Congress want to provide this rehabilitation opportunity. Students, recent students' financial circumstances can change, and basically everybody's better off with a voluntary agreement that restructures the agreement rather than fighting through a collection process. That's exactly right. So I'd like to reserve some time for rebuttal when I see that. Sure. Thank you, Ms. McGaughey. Thank you. Ms. Martin. Thank you, Your Honors. May it please the Court, I'm Bonnie Martin, representing the Appley United Student Aid Funds, Inc., here to request that this Court affirm the District Court's dismissal of Ms. Bible's First Amendment complaint. And that is for three reasons. First, Ms. Bible has a remedy elsewhere. The second reason is that the regulations under the FELP do not say what Ms. Bible wants them to. And third, Ms. Bible was repeatedly informed that she was going to owe collection costs on her student loan upon default. Looking first at the remedy that Ms. Bible has available, the FELP regulations provide a mechanism for Ms. Bible to go to the Department of Education and not the Court to have her issues addressed. Does that provide an individual remedy? I'm sorry, Your Honor. Does that provide an individual remedy or just action taken against the guarantee agency? It would be for the Department of Education to pursue the guarantee agency. So she has to ask the bureaucracy for that help, right? And there is a very clearly set out process that the Department of Education has put together through its ombudsman program, actually. Could you address, Ms. Martin, the Wygod case? In your brief, you tried to distinguish it on two grounds. One was that there was no enforcement scheme. Plaintiff in her reply brief has said, yes, there was under the HAMP program. And I'd be interested in any other grounds you might offer for distinguishing it. Certainly. And there are a variety of ways that Wygod is different from the case before the Court today. The first would be certainly the issue of the enforcement scheme that we've been talking about. Although the HAMP program provides some degree of administrative process, it is not the same as what the Higher Education Act. Is there any indication in the Wygod opinion that that made a difference? There is not a specific statement by the Court saying that the administrative enforcement scheme was a deciding factor one way or another. But it certainly has an impact on the preemption analysis that the Court made, which was one of the issues that distinguished that opinion from this case. In that case, the Court looked at the end-run theory, which is how that plaintiff styled the defendant. So that defendant argued it. What do you call your theory? Well, essentially we have argued it in two different ways. First is that her breach of contract in RICO claims are really a disguised higher education act. Disguised versus end-run. Right. Look, the contract, the Master Promissory Note, says repeatedly that the Higher Education Act governs, right? Yes, Sean. And including with respect to collection costs. Is it your view that the Master Promissory Note allows you to impose collection costs beyond those that are authorized by the Act and its regulations? The Master Promissory Note provides for collection costs in several different ways, including ways that the Higher Education Act sets forth. First of all- Could you answer my question, please? Does it authorize you to charge collection costs that are not authorized by the Federal Act? Yes, Your Honor. To the extent that- Where? How? It is authorizing that collection costs may be assessed when any payment under the note is not made. But it also certainly does incorporate- Where do we see that? Particularly in light of the language that with respect to late charges and collection costs, authorizes any other charges and fees that are permitted by the Act for the collection of my loans. So we know if they're permitted by the Act, they're okay. That's correct. And what USA Funds is looking at here is collection costs that are permitted by the Act. This case is not about- You can charge collection costs that are not authorized by the Act. That's not what this case is about. That's a separate question. But I want to make sure that we understand that the Act does, in fact, cover this contract. The Act does cover this contract. And that is one of the distinguishing facts with respect to the Wygod case. The Wygod case was looking at a breach of contract claim that was specifically looking at this agreement that was presented to that plaintiff under the HAMP program to modify that particular mortgage loan obligation. And the court had that provision in front of it, where the plaintiff was saying this particular provision was violated. And certainly they were looking to the underlying statute, for which there was no private right of action to interpret that. But here the difference is that there is no provision in the Master Promissory Note, which we're looking at, that gives Ms. Bible the relief that she is seeking. She can only go to the FELP regulations to find that relief. I don't understand. I don't understand. If the contract relies upon the Act and its regulations to determine what collection costs are permissible, then you can't distinguish Wygod. You can argue about the contents of the regulations, but I don't see how you distinguish Wygod. The distinction would be that the regulation is the only place that she could get that information, whereas that was slightly different in the Wygod case. Here, however, looking at the conflict. That slight difference you're saying is utterly decisive here. Well, the difference is a reason for the court to look at it differently here. And in that case, the court looked at the end-run theory as running contrary to the conflict preemption analysis, that the two were not compatible. Here that's not the case. Here the court has certainly the information in front of it that there is certainly no private right of action under the Higher Education Act, but that alone doesn't resolve the issue when you have conflict preemption working together, because certainly here we have sort of a hand-in-glove process. In Wygod, the court noted that there was no finding that the contract principles would require conduct inconsistent with the HAMP requirements or that enforcing state law would stand as an obstacle to the HAMP. Here we have a situation that is similar to what the Ninth Circuit had in the Che versus SLM case. The Ninth Circuit and Che distinguished precisely this situation. The problem in the Che decision was that the plaintiffs were trying to argue for standards different from the federal statute and regulations, right? Yes, Your Honor, and that's what we have here. Wait a second. That depends on your debate with your opposing counsel about the content of the regulations, not about whether the regulations are part of the contract, right? Let me try to come at this from a slightly different angle. The Act imposes limits on both interest rate and collection costs, correct? Yes. Okay. And the contract incorporates the statute, right, in its regulations? That's correct. So suppose the lender or the guarantee agency tries to impose an interest rate or collection costs above those caps. What does the borrower do? Any recourse? The recourse would be to go through the Department of Education and their enforcement process. Without any rights under the contract? Without rights within those areas where you have a situation. For those critical terms? Well, where there is a conflict, where there could be a conflict in the uniform enforcement of the FELP regulations. And here we have the situation where the FELP regulations, Ms. Bible is trying to meld the two different regulations together to get the result that she's looking for. She's looking at the payment that is described in the loan rehabilitation regulation, that 682.405, where the payment is described as what is reasonable and affordable. That's the regulatory language. And that could be, it's dependent upon a formula that the regulations set out, could be as low as $5. Now, the other regulation that she is looking at, that 682.410, puts it into a much clearer perspective in which what Ms. Bible is arguing is trying to graft that loan rehabilitation payment onto this where it says that the guarantor, before assessing collection costs on a defaulted loan, must offer the opportunity to enter into a repayment agreement on terms satisfactory to the guarantor. And she is trying to read those two regulations together to get the outcome that she wants. What she wants is for the rehabilitation payment, $50 a month in her case, to be a satisfactory payment to the guarantor, which the regulation reserves that discretion to the guarantor, because it takes away their ability to assess collection costs on an already defaulted student loan. She wants to put those terms together. And so the result of that would be that a court or another entity could determine what is satisfactory to the guarantor. And looking at paragraph 24 of her first amended complaint, that effort is put into very stark terms, where she says, citing that administrative regulation, 410, that giving the delinquent borrower an additional incentive to rehabilitate, that that regulation isn't talking about rehabilitation. The regulations require that guarantors give borrowers the opportunity to rehabilitate or enter into an alternative payment arrangement before assessing collection costs. And that's not what the regulation says. It looks like that's what it says. Well, what the regulation says is that the guarantor must offer them an opportunity to enter into an arrangement that is satisfactory to the guarantor. Now, certainly... So do you read this as saying it's not satisfactory to us unless we get to impose later collection costs that have already been incurred but that we weren't allowed to assess before? I don't know that that would be the case, although certainly it is an issue of the agencies. Well, look, your client sent out the notice that said collection costs are zero, and the amount due was about $18,000, right? Right. But the current collection charges were zero. Right. And you're not allowed to assess collection costs until after you've provided this opportunity. That's correct. And so did you incur any additional collection costs? Well, I think in the record it demonstrates that at least some additional collection costs were incurred. Any attorney's fees? There's no indication of attorney's fees. Court costs? Referral to a collection agency? Yes, the referral to a collection agency. Exhibits 3 and 4 of the First Amendment complaint demonstrate that USA Funds, in fact, had to engage GRC, a collection agency, to communicate with Ms. Bible, and it's with GRC that Ms. Bible entered into the agreement. And that was $4,500 worth of collection costs? Your Honor, the way that the law has evolved on that point, and the particular calculation is no longer at issue in this case, but the calculation of it. Actually it is, but I'd like to ask you about that in a moment. With respect to how that collection cost amount is determined, that was at issue in the Barnes case, which became the Black case, where the issue was is it constitutional to assess collection costs on these defaulted student loans on a percentage basis. And there was a significant amount of briefing, certainly, and argument about that. But the court ultimately determined that that was acceptable, and it was based on sort of that practical idea that, you know, those who pay often bear the cost of those who don't pay. When you assess collection costs, they were about $4,500, correct? That's approximately correct. At that time, the principal was an interest that were due. Payoff had been about $18,000, right? Yes, Your Honor. Okay. The regulations impose a cap of 18.5%? The 18.5% comes into play only for borrowers who successfully complete that loan rehabilitation process. Complete. Complete. Say that again. Complete what? The loan rehabilitation process. So that is one of the benefits of the loan rehabilitation process, along with clearing your credit, along with removing default, is that you have your collection costs reduced to the 18.5%. So the amount you actually assessed was about 25%, right? It was in the 20s. It was about 25%. In that realm. Are the payments current now? To my knowledge, they are current now. And in the process, after you get through that 10-month, $50, I assume then there is an agreed amount of what is owed monthly, more than $50, I presume. That's correct. The payment would change. And that process is underway. It's not, and if for whatever reason that breaks down, and they have to do collection costs or do other things to get involved, is that part of what could be accrued and limited to 18% of the, I guess, what is it, of the amount owed? It's the principal and accrued interest at that, at the completion of rehabilitation. Yeah, and so if there are, after that new agreement is underway and paying, if there's some default or some not payment or whatever, there will be notices, collection costs, and other things, I guess, during that process. And what the agreement would do is limit it, any costs or whatever, to keep these payments coming, or whatever it takes. I guess you'd call those collection costs. That would be limited to 18% of the outstanding loan at that time. Right, and that's correct. And so it would be limited at that point to the 18.5%, even if there was a significantly more or a greater need for communication from the debt collector or whoever was retained for that purpose, those costs would stay at that level that was entered into at the completion of the loan rehabilitation. Ms. Martin, the parties here obviously have a pretty substantial disagreement over the way these regulations work. Has anybody invited the DOE to offer its views in this case? No, Your Honor. Can you point us to any place other than the Barnes briefs where this question has been addressed? Actually, in the Che case, the Ninth Circuit had the benefit of the United States Department of Education weighing in on that conflict preemption issue. Those plaintiffs were actually trying to get a conflict, though, right? So, I mean, that's a... In that case, the court certainly looked at their take on whether or not preemption would apply, and specifically the United States Department of Education's view on uniformity in the application of the felt, which applies in this case particularly with Ms. Bible's attempt to look at these two regulations together. Because essentially what she's asking is for the court to tell the guarantor what is a satisfactory payment arrangement, which would tear that uniformity apart. Essentially, a guarantor, a court might tell a guarantor in one instance that a rehabilitation payment was or should be satisfactory under Ms. Bible's reading. Another court may not. No, the plaintiff is asking us to interpret the regulation to mean that you cannot assess collection costs until somebody has had the opportunity to enter into that agreement. Now, that may be right, it may be wrong, but courts interpret... We interpret federal regulations every week in this court, and that is usually not thought to pose a great threat to the uniformity of federal law. Certainly. With the particular regulations here, however, the scheme is designed for the uniformity which the Department of Education's enforcement and the ability to take any of the panoply of remedies that they have before them, whether it's filing their own lawsuit, assessing civil penalties, terminating a guarantor's participation in the process, that is designed to address that. And so you don't have, then, the danger of the federal courts or 50 states indicating that collection costs are appropriate in one sense and not another, which would lead to the inconsistent assessment. Couldn't the same problem arise if down the road, let's say the plaintiff defaults again, your client sues to collect, and she offers as a defense, these collection costs are not authorized by the Department of Education or by the contract? State court would have to decide that, wouldn't it? To the extent that that issue was raised as a defense, the issue would still be one that could be presented to the Department of Education. So a state court could not hear that defense? The state court could. Your position seems to be that whatever critical rights most of us think one party of the contract would have can't be enforced in court, but only by going to the Department of Education and saying, please go after or please stand up for me, as opposed to standing up for herself. In that case, certainly, if an entity is using that as a defense, then they could invite the Department of Education to be part of that process to look at those issues and certainly weigh in because that is the way that the FELP regulations are put together. Looking at both the Section 405 and 410, it's talking about the obligations that either the Department of Education or the guarantor have with one another. And so that's the structure that those regulations have. Which you think prevents courts from interpreting them because of the threat to uniformity? To the extent that claims like Ms. Bibles are brought, where she is solely seeking relief from the guarantor here, USA Funds. But it would be okay to hear that as a defense? The same policy would not apply. Precisely the same legal issue presented in state or federal courts where the lender or guarantor is seeking to collect the debt. Again, the issue could be raised to the Department of Education. Could it be raised in court? It could be raised in court, but not as seeking affirmative relief, which is what she's doing here, which is a different outcome. Why should there be a difference, since the court decisions presumably would be authoritative in either context for the interpretation of the regulations? With respect to the remedy that she is seeking, the Department of Education is the only one who can give her the remedy that she is seeking, depending on what that might be in another case. But it's the department, based on the regulations that we have, that is providing that remedy. And certainly, looking at the remedial scheme, resolving these cases at a motion-to-dismiss stage is particularly important for preserving the integrity of that scheme. I know your time has expired, but that last comment is a bit of a mystery to me. It's important that these be dismissed at the pleading stage to protect the integrity of the program? What do you mean? That the court is not involved in cases that can properly be addressed by the administrative agency that is tasked with this. As an issue of judicial efficiency, certainly the motion-to-dismiss stage is really the ideal time to look at that issue. Our court doors are open for a reason. Thank you. Ms. Martin? Thank you, Your Honor. Thank you. So I'd just like to clarify one thing. Ms. Martin answered a question earlier about whether the Department of Education has been invited to participate. Appellant invited the Department of Education, whose response was that they didn't think they would be able to move quick enough to file an amicus brief. And this isn't part of the record, but they have indicated that they intend to issue a policy letter reiterating their position in Barnes. We can't take that into consideration at all. It's not in the record. The fact that the Department of Education is not here is important for a few reasons. One is that the idea that there is some kind of remedial scheme or ability to rely on the Department of Education to enforce these types of claims just rings hollow because this isn't an agency that has the same types of procedures, for example, as the EEOC where you file a charge and then a complaint issues. Ms. Bible would be left to write the Department of Education a letter and hope that they took some kind of action, and they just might not. This contract allows her to bring her claims in court, and so that's what she's done. For what it's worth, the EEOC gets hundreds of thousands of charges every year and winds up bringing a few hundred lawsuits every year. And all the more reason that private lawsuits with breach of contract claims such as this should be allowed to go forward. So Ms. Martin spoke- I was going to say that the breach of contract, I mean, this is a contract, and it does seem to me it is enforceable if there is a default, right? If there is a default- During this rehab time. If there is a default during the rehab time, which there has not been, then yes, the contract would be enforceable on its terms. Okay, if there's not any breach, are these expenses that you're referring to that shouldn't be there already incurred? Is that your problem, the $4,500 or whatever it is? No. The problem here is that those costs could not be imposed because Ms. Bible started this rehabilitation process in a timely manner. Well, she's not immune to some further breach, is she? She's not immune to suit, certainly, if she doesn't fulfill her end of the bargain, but she did fulfill her end of the bargain. And so the breach here is on USA Fund's part. Because they've charged her expenses, you say? Exactly, because they- That were not incurred. That were not incurred, but also by the terms of the contract, couldn't be imposed even if they had been incurred because the contract does not allow for costs to be imposed where a borrower agrees to timely rehabilitate as Ms. Bible did. Yeah, but if she doesn't fulfill that, then the only benefit of this agreement is that whatever the balance of principle is, it can't be more than 18 percent, 18.5 percent of expenses. That's got to mean something. If she doesn't fulfill it, but we're not at that. Okay, we don't have a breach here. We have a breach because USA Fund's breached the contract. Well, they're trying to collect those? Yes. And you say they were not incurred? They were not incurred, certainly not $4,500, but also they couldn't be imposed in the first instance because the contract does not allow the imposition of costs where a borrower timely agrees to rehabilitate. And the payments that she's been making have been credited towards those collection costs that you say cannot be imposed rather than towards her interest in principle. Correct. She's been losing ground rather than gaining ground. That's exactly right. Wasn't that an initial situation where they were combined? I think the $50 a month went to that, didn't it? $50 a month was paid in Ms. Bible's view, according to the terms of this contract, to pay down the principle. But USA Fund's- I thought they weren't paying down the principle. They are designed to pay down the principle, yes. The contract says that collection costs can't be imposed, so the amount that she's paying is to go towards principle, not unauthorized collection costs. The problem here is that USA Funds took that money and applied it to the collection costs. All right. And if I may just say one word about this idea of a rehabilitation agreement not meaning the same thing as a repayment agreement. USA Funds offered this agreement to Ms. Bible. It has to be a repayment agreement that's satisfactory to the agency. It was their idea to begin with. But more importantly, the Southern District of Indiana, in the Barnes case, in talking about repayment, the idea of repayment that avoids collection costs when it's entered into in a timely manner, specifically used the term rehabilitation and explained that those charges, collection costs, became chargeable when the Barneses in that case did not take the opportunity to rehabilitate. And that's the word the court uses, to rehabilitate their loan and avoid those collection costs. Thank you. Thank you. Thanks to all counsel. The case is taken under advisement.